```
                                                    FILED
                                            CLERK, U.S. DISTRICT COURT

                                              2004 NOV 17 A 11:06

                                             DISTRICT OF UTAH
Melvin A Cook (7489)                         BY:_____
139 E. South Temple, Suite 300                  DEPUTY CLERK
Salt Lake City, Utah 84111
Telephone: (801) 746-5075
Facsimile: (801) 746-5076
```

Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALTHEA HOLMES, <br>     Plaintiff, | VERIFIED COMPLAINT |
| v. | Judge Dee Benson <br> DECK TYPE: Civil |
| TESORO REFINING & MARKETING CO,: <br>     Defendant. | DATE STAMP: 11/17/2004 @ 11:04:35 <br> CASE NUMBER: 2:04CV01063 DB |

Petitioner, by and through her attorney of record, Melvin A Cook, complains and alleges against Defendant as follows:

### STATEMENT OF JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 42 U.S.C. 2000 e.

2. Plaintiff is an individual residing in Salt Lake City, County of Salt Lake, State of Utah.

3. Defendant is a Corporation doing business in Utah.

4. Venue is proper in this District as all of the events giving rise to this cause of action occurred in Salt Lake County, State of Utah.

## STATEMENT OF FACTS

5. Plaintiff was hired as a Customer Service Associate by defendant Tesoro in February, 2004. Plaintiff started out doing graveyard shifts at a service station.

6. At the time of being hired, Plaintiff informed her supervisor that she had a prior back injury and that she had to be careful how she did things because of her back problems

7. Plaintiff's supervisor agreed that Plaintiff's schedule would be three nights per week doing graveyard shifts and one afternoon shift per week on a weekend.

8. In March, 2004 Plaintiff asked her supervisor to be a transferred to a different store for the purpose of working afternoon shifts.

9. Plaintiff's supervisor denied the request, stating that she would not let Plaintiff go because she was too good of a worker.

10. Plaintiff then asked her supervisor to be placed on afternoon shifts at the store she was working at.

11. Plaintiff's supervisor denied the request, stating that she loved coming into the store in the morning and finding it spotless and that, in addition, there were no openings for an afternoon shift.

12. On April 21, 2004 Plaintiff brought in work restrictions from her doctor, Scott Johnson, M.D. The restrictions state she could lift no more than 15 lbs., and could not engage in twisting or stooping more than four times in an hour. Plaintiff's doctor also indicated that Plaintiff might require time off for therapy appointments as needed.

13. On or about April 21, 2004 Plaintiff received injections from Dr. Scott Johnson, M.D., for back pain she had been experiencing.

14. Approximately two weeks thereafter, or sometime in early May, Doug, a fellow graveyard shift employee, had a seizure or a heart attack while on the job for Tersoro.

15. A regular graveyard customer came in to get coffee and found Doug lying on the ground.

16. Doug's boss was contacted and he was taken to the hospital.

17. One week after this incident occurred, Doug came back to work for Tesoro with restrictions from his doctor. His restrictions were roughly as follows: he could not work alone anymore, but had to be put on afternoon shift working with someone else. He was not allowed to drive for three months. He was not to lift more than fifteen (15) lbs. He was allowed to sit down on the job as needed.

18. Plaintiff's supervisor, Shelley Estrada, informed Plaintiff that she would need to work five nights per week doing graveyard shifts because Doug got hurt and had restrictions.

19. Plaintiff agreed to this schedule.

20. During these graveyard shifts, there were times when Plaintiff's supervisor had the Plaintiff work double shifts because Doug was unable to work during those times.

21. Plaintiff went back to her doctor Scott Johnson on May 14, 2004. Plaintiff called and told her supervisor a week in advance that she would not be able to work that night.

22. Plaintiff's supervisor told her either to come to work or to find someone to cover the shift for that night because she was not going to cover it.

23. On May 14, 2004 Plaintiff brought her supervisor new doctor's restrictions, which were; no more lifting more than fifteen (15) lbs., and no bending, twisting or stooping for the time period of one month.

24. Plaintiff's supervisor then cut her schedule down to two days per week, on or about May 20th, 2004 and she hired another person for graveyard shift.

25. On about May 29th, 2004 Plaintiff's supervisor had her work a graveyard shift.

26. The following day, May 30th, 2004, Plaintiff's supervisor had her work the day shift, which started about two hours after completing her graveyard shift. Plaintiff worked from ten o'clock on May 22nd and got off at six o'clock on May 30th. Plaintiff was then required to be back at work at eleven o' clock on May 23rd and work until seven 'o clock that evening.

27. Thus, Plaintiff was required to work sixteen hours in about a twenty-one hour period.

28. On May 31st Plaintiff called her doctor's office and explained how much pain she was in.

29. The doctor's office then wrote a third note that Plaintiff was limited to working eight hours in a work day.

30. On Thursday, June 3rd, 2004 Plaintiff's supervisor told her not to come in that week and that they were asking her to take a month off from work.

31. Plaintiff asked her why and her supervisor told her it was because of her back and to give her time to heal.

32. On June 3rd, Plaintiff went to pick up her paycheck and received a letter instructing her to take time off from work from June 13th through July 14th.

33. However, Plaintiff's work restrictions from her doctor were to end on June 14th, 2004.

34. On July 8th Plaintiff called her supervisor and informed her she was returning back to work.

35. Plaintiff's supervisor told her that her doctor needed to fill out a job description describing the restrictions.

36. On July 8th Dr. Johnson filled out Plaintiff's job description, indicating that Plaintiff had no further restrictions and questioning why Plaintiff was released from work, because he had never restricted her from working.

37. The next day Plaintiff received a call from the Defendant's HR director requesting her medical records.

38. Plaintiff refused to sign the release for her employer to get her medical records.

39. Plaintiff's employer never requested Plaintiff's co-worker Doug's medical records, even though he evidently had a more serious condition than Plaintiff.

40. Doug was never requested to fill out a job description.

41. Doug was allowed to work an afternoon shift, while Plaintiff was denied this opportunity.

42. Plaintiff also requested to work in the store managed by her husband for an afternoon shirt, but was turned down because of Defendant's alleged anti-nepotism policy.

43. However, during this same time period, two people, namely the Hambys, worked together in one of Defendant's stores. The Hambys are related through marriage.

## FIRST CAUSE OF ACTION
(For Gender Discrimination under 42 U.S.C. 2000)

44. Plaintiff reaffirms and realleges each and every allegation set forth in paragraphs 1-40 above, and further alleges as follows.

45. The facts alleged demonstrated that Defendant Tesoro discriminated against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment because of her sex.

46. Defendant Tesoro treated a male employee vastly differently from Plaintiff.

47. Defendant Tesoro accommodated the male employee's medical condition by allowing him to work afternoon shifts.

48. On the other hand, Defendant Tesoro had Plaintiff work extra graveyard shifts in order to accommodate the male employee.

49. Defendant Tesoro took Plaintiff off of work for an entire month even though Plaintiff's treating doctor never restricted her from working.

50. Defendant Tesoro would not allow Plaintiff to work an afternoon shift at the store her husband supervised, ostensibly because of an anti-nepotism policy.

51. However, that this was a pre-text is demonstrated by the fact that during the same time period, there were two people related by marriage working together at one of the Defendant's stores.

52. Defendant Tesoro has requested Plaintiff to release her medical records to them; however, such a request was never made to the male employee with a medical condition.

53. These facts demonstrate a pattern of discrimination against Plaintiff based on her gender, as no other reason for the disparate treatment appears to exist, other than pretextual reasons.

## DAMAGES

54. As a proximate cause of Defendant's discrimination, Plaintiff has suffered damages in an amount within the jurisdictional limits of this court.

WHEREFORE, Plaintiff prays for judgment against Defendant for damages in an unspecified amount, as follows:

    a    Mental anguish in the past and future.

    b.    Loss of earnings in the past and future.

    c.    For punitive damages.

    d.    Costs of suit;

    e.    Reasonable attorney fees;

    f.    Prejudgment and postjudgment interest; and

    g.    All other relief to which Plaintiff may be entitled in law and in equity.

DATED this 17th day of November, 2004.

_____
Melvin A Cook

## VERIFICATION

_Althea M Holmes_
Althea Holmes

STATE OF UTAH          )
                       :ss
COUNTY OF SALT LAKE    )

I hereby certify that on the 2 day of November, 2004 Althea Holmes, personally appeared before me, and being first duly sworn stated and now says that she is the Plaintiff in the above-entitled action; that she has read the foregoing, and understands the contents thereof, and the same is true of her own knowledge, information and belief.

_Stephanie Bowers_
Notary Public

```
Notary Public
STEPHANIE BOWERS
136 East South Temple, Suite 330
Salt Lake City, Utah 84111
My Commission Expires
May 21, 2007
State of Utah
```